[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was tried over a number of days before the late Richard C. Noren, J., whose tragic death occurred before decision was rendered in the matter. On October 10, 1989, the parties signed a stipulation waiving any time requirements for the entry of judgment and stipulating that judgment could be entered upon review of the transcripts and exhibits in this matter.
The undersigned has reviewed the transcripts and CT Page 2063 exhibits at great length and issues the following decision.
On October 21, 1988, the late Judge Noren dissolved the marriage of the parties and awarded custody of the minor child to plaintiff mother with reasonable rights of visitation to defendant husband. The Court assumes that the pendente lite orders have been in effect until final judgment on the questions of finances have been rendered. Because of the lapse of time, the Court has, of course, no evidence before it as to whether or not an arrearage exists and therefore leaves the judgment open for a determination of any arrearage on the pendente lite orders, if a motion for determination of that pendente lite arrearage is filed within 30 days from the date of this judgment. The Court also received two envelopes allegedly from the plaintiff wife but did not open either envelope and the same will be available at the Clerk's Office should either or both counsel wish to obtain them. The Court is obviously not taking those letters into account, and does not know whether or not plaintiff even sent the letters to the Court.
The parties were married on December 6, 1969, and had two children issue of the marriage: Tracy Marie, who is now 16 years old and James J. Nahas, Jr., who was a minor when the action for dissolution of marriage was commenced, but has now reached the age of majority.
The defendant is a master meat cutter, who had purchased a family business consisting of a small grocery store with an emphasis on the store's reputation for high quality meat products. This store was located in New London, but a second store was purchased, located in the town of Groton, as the defendant entered into a business relationship with defendant's brother and both stores were operated under the umbrella of a single corporation.
Unfortunately, these stores, particularly the Groton store operated by the defendant's brother, did not do as well as anticipated, or indeed as well as had been the case previously, and the downturn in business coincided with the separation of the parties in this action. Not surprisingly, the plaintiff is convinced that all of the alleged financial reverses have been manufactured by the defendant and his family to prevent the plaintiff from receiving her rightful due.
To further fuel plaintiff's suspicion, defendant and his brother (with his brother taking the lead) entered into a restaurant venture which was spectacularly unsuccessful. The Groton store has been sold, the restaurant is long since out CT Page 2064 of business, the defendant is in considerably worse financial condition than he was a year before the marriage of the parties broke up.
The Court has laboriously reviewed the numerous financial documents submitted as evidence in the hearing, and finds that while the defendant certainly deserves no accolades for careful record keeping or indeed sound business practices, the defendant's financial reverses were real and not generated for the purpose of evading any financial responsibility to the plaintiff.
Nonetheless, the defendant is still the owner of a functioning business, is still a master meat cutter, and enjoys a significant earning capacity. Whether he chooses to use that earning capacity in the continuation of the New London store or whether he chooses to become employed as a butcher in one of the many large supermarkets that the defendant claims is impacting adversely his present store, the earning capacity of the defendant is obvious. In addition, the defendant owns the land and building in which the store is located, and the defendant's affidavit indicates that that business has a fair market value (not deducting for any mortgages) of $125,000.00. Testimony indicates that the property is listed for substantially more than that, but that the listing had, as of the time of the trial, produced no offers.
The plaintiff's earning capacity is limited indeed, and she is employed at a job paying an hourly wage from which she nets something in the vicinity of $150.00, with a potential for some additional hours. The plaintiff's earning capacity is, at best, in the vicinity of $200.00 per week. The defendant's own affidavit indicates a $500.00 per week salary from the business which he owns entirely, and the Court finds that his earning capacity is in the vicinity of $600.00 per week.
The defendant has testified that the cause for the breakdown of the marriage was joint, with plaintiff's lack of responsiveness to the needs of the defendant being at least a partial cause of the breakdown of the marriage. Plaintiff has testified that the marriage has been broken down because of the defendant's philandering, and the Court accepts the plaintiff's testimony that she has contracted venereal disease from sexual contact with the defendant. From that fact the Court concludes that the defendant has been unfaithful to the plaintiff during the marriage. The Court further finds that the breakdown of the marriage has been caused primarily, if not exclusively, by the conduct of the defendant husband. The CT Page 2065 Court in making the following awards has considered each and every standard set forth in Connecticut General Statutes sections 46b-81, 46b-82, and 46b-84.
All of the right, title and interest in the jointly owned property located at 9 Rosemary Street in the town of New London is set over to the plaintiff, and the defendant is ordered to quitclaim his interest in that property to the plaintiff. Plaintiff will receive the property subject only to the first mortgage and any unpaid real estate taxes on that property, from which mortgage and from which real estate tax liability she will indemnify and hold the defendant harmless. The defendant is ordered to indemnify and hold harmless the plaintiff from the second mortgage and any other encumbrance on said property. The defendant is ordered to make his best efforts to obtain a release within 90 days of the date of this judgment of the second mortgage on that property, if it is still in existence. If the defendant is unable to release that mortgage, he is ordered to either file a stipulation signed by both parties acknowledging that fact with the court within 120 days of this judgment or file a motion within 90 days of this judgment asking for a judicial finding that he is unable to obtain a release of said second mortgage. In any event, the defendant is obligated to indemnify and hold harmless the plaintiff from said second mortgage.
The defendant is ordered to pay child support to the plaintiff in the amount of $110.00 per week. In addition, the defendant is ordered to maintain the child as a beneficiary of the existing medical insurance, or obtain Blue Cross and CMS coverage for the minor child. While the Court cannot order it, the Court notes that it will cost the defendant nothing additional to maintain the defendant's son on that policy, so long as the son is a fulltime student, as he was at the time of this hearing. The provisions of 46b-84c are incorporated into this order. With respect to medical insurance coverage for the plaintiff, to the extent that it is permitted by law, the defendant is ordered to cooperate and make available medical insurance coverage on his medical insurance for the plaintiff, at her election and at her cost. Each party is ordered to pay one half of all unreimbursed medical, dental, orthodontic, optometric and other health related expenses of the minor child.
In addition, the Court orders the defendant to pay to the plaintiff the sum of $125.00 per week in alimony for five years. Said alimony payments will continue for the stated period unless the plaintiff dies or remarries, or unless the defendant dies. CT Page 2066
The defendant is ordered to maintain $25,000.00 of life insurance on his life payable to the plaintiff as beneficiary for so long as he is obligated to pay alimony under this decree, and is further ordered to maintain $50,000.00 of life insurance with the minor child as beneficiary during her minority.
While ordinarily in a case like this the Court would not be inclined to award counsel fees, the defendant, largely through careless business management and inexact record keeping, has throughout the pendency of this overly long case fueled the suspicions of the plaintiff and has made it extraordinarily difficult for plaintiff's counsel to obtain sufficient financial information to intelligently advise her client of the true financial situation of the defendant. This failure on the part of the defendant to accurately and fully disclose the details of the somewhat complicated business structure under which he operated has caused the legal fees of the plaintiff to be greatly increased over what they should have been, if defendant had provided complete and accurate financial information at an early stage in these proceedings. The Court notes that an entirely new corporate entity was only disclosed during testimony at the trial, in response to questions from plaintiff's attorney, and this is simply not acceptable financial disclosure under our rules. Largely for that reason, but also in the exercise of the discretion vested in the Court, the Court orders the defendant to pay counsel fees in the amount of $2,400.00 to the counsel for the plaintiff at the rate of $100.00 per month commencing 30 days after the date of this judgment.
Judgment will enter accordingly.
Koletsky, J.